STATE OF MONTANA, Plaintiff and Respondent, *v.* FRED LOWERY, Defendant and Appellant.

No. 11092.

Submitted June 13, 1966. Decided July 20, 1966.

417 P.2d 113.

John W. Whelan (argued), Butte, for appellant.

Mark Sullivan, County Atty., and F. Lee Williams, Deputy County Atty., Butte, William S. Sternhagen, Asst. Atty. Gen. (argued), Forrest H. Anderson, Atty. Gen., Helena, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from an order denying and dismissing two motions heard upon a petition for a writ of error coram nobis.

This cause arose in Butte, Silver Bow County, Montana, where appellant was charged with the crime of first degree murder committed on January 8, 1963. A shooting occurred in the early morning hours in the home of the appellant. From the record it appears that appellant fired three shots at the victim, Donald McKay, with a 30-30 rifle. The third shot struck McKay in the head, killing him instantly.

After the killing the police took appellant to the city jail, fingerprinted him and he was given a blood test. An hour later he was transferred to the county jail. It would appear that an assistant county attorney questioned the appellant anent the shooting and killing of McKay and the events leading up to the fatal shot. The appellant then signed a paper (believed to be a confession) although this document was never displayed or exhibited, neither does it appear in the record.

Following this incident, appellant was taken before the trial court.

Bail was set at the sum of $15,000 and the trial court immediately and on the same day, appointed two experienced lawyers to defend the appellant. One was Krest Cyr, for eight years United States District Attorney for Montana, and the other was John T. Mullany, likewise an experienced trial attorney. They advised the appellant that he had signed a confession, and further advised the appellant, that by reason of the facts known to them, that if they could persuade the county attorney to reduce the crime to second degree murder the appellant could thereby avoid a possible death penalty verdict

that might occur upon a jury trial. It would also appear there was some discussion as to the length of sentence and the actual years to be served prior to parole. While the information did not mention a prior conviction of second degree murder in North Carolina, this conviction was also discussed by appellant and his two able attorneys.

On January 10, 1963, appellant appeared before the Honorable John B. McClernan, presiding judge, with his counsel who requested further time to consult with appellant and the matter was continued to January 25, 1963.

On January 25, appellant with his counsel appeared in court and argued a motion to set aside the information, a demurrer to the information and a motion to dismiss the information. All motions were by the court denied.

On May 28, 1963, appellant with his counsel appeared before Judge McClernan; county attorney R. J. Holland then moved the court to amend the information on file and to reduce the charge to second degree murder.

The court then asked the appellant if he understood the purport of the motion and if he plead "guilty" to second degree murder. The court further asked appellant's counsel if they agreed to this amendment and plea and all answered in the affirmative Appellant was then asked by the court as to any *legal cause* he might have as to why judgment should not be pronounced at this time. No cause appearing by either appellant or his counsel, sentence of 17 years in prison was then pronounced.

Following this careful protection of all of appellant's civil, statutory and constitutional rights, tinged with compassion on the part of both the county attorney, trial judge and counsel for appellant, appellant then commenced a deluge of writs to the trial court.

These prolific documents run the gamut of post conviction remedies, commencing with a writ of error coram nobis under date of May 18, 1964.

On June 17, 1964, appellant filed a petition for a writ of habeas corpus ad testificandum together with an affidavit of poverty. Interposed in this morass of paper work were sundry letters written to the clerk of court requesting that the several writs be consolidated, and that appellant be notified of the date set for hearing. On December 16, 1964, the clerk of court wrote appellant stating that no notice for hearing any of the multiple writs had been made, neither had any legal notices been sent for the hearing as required by law.

Also filed was a petition for judgment on the pleadings and a multipage document entitled "Jurisdictional Statement," citing several United States Supreme Court opinions in criminal cases. Incorporated in this mass was another document of several pages entitled "Petition for writ of error—information attached." This document recites the incompetency of his counsel, and asserted a defense of self defense, and asserted alleged misdemeanors and felonies of the State's witnesses.

On September 8, 1965, the trial judge set the entire matter for hearing and appointed counsel, John W. Whelan, Esq., to represent appellant. Mr. Whelan on the same date filed a motion to vacate the judgment and withdraw the plea of "guilty" heretofore entered on May 28, 1963.

The testimony of appellant in this hearing produced some unique statements by the appellant, for example:

"Q. Did you feel that the fact that you faced a possible death penalty was a threat made to you by your counsel or the county attorney's office? A. Yes, sir.

"Q. That was a threat? A. Yes, sir.

"Q. Nevertheless, you now know that that is the law in the state? A. Yes, sir.

"Q. But, nevertheless, you felt it was a threat? A. Yes, sir. I figured it was more or less of a lever, too—I'd say a lever and a threat."

That the appellant was aware of some of his rights appears from this testimony:

"Q. One of your allegations, Mr. Lowery, was the excessive bail, do you recall what the bail was? A. Yes, sir, it was fifteen thousand ($15,000).

"Q. And you felt that that was excessive in a First Degree Murder charge? A. Well, I didn't know, I've never had a bail before.

"Q. What bail did they set for you in your trial down in North Carolina? A. I didn't have any bail at the time.

"Q. Did you go to trial down there on a First Degree Murder charge? A. Well, I refuse to answer that. I stand on the Fifth Amendment on this, because I don't think the charges—

"Q. Well, it concerns your familiarity with bail, you said you had no bail set? A. Yes, sir, no bail."

To demonstrate appellant's ingratitude toward his original counsel we observe these statements about the incompetency:

"Q. Was it explained to you by your counsel that if you called character witnesses in the event of a trial that your character could then be gone into, prior convictions, et cetera? A. Well, the way it was relayed to me was that character witnesses wasn't going to help me any; the most thing that they was interested in was what happened down in my place at the time of the shooting—that's what it would always lead back to when I mentioned character witnesses.

"Q. Do you recall at any time being advised by your defense counsel that there was a possibility of bringing up your past record if and when you brought in the issue of character? A. Yes, sir.

"Q. Well, Mr. Lowery, sitting here in court today, as you have noticed, are those same defense counsel which you referred to in your Petition, Mr. Mullany and Mr. Krest Cyr, now, do you have any objections at this time to having them relate from the witness stand what they recall about their conference with you? A. No objection."

Thereafter, however, after conference with his then counsel, appellant refused to allow Mr. Cyr and Mr. Mullany to testify.

The court denied all the motions and pleadings and this appeal ensued.

The brief of appellant contains no specifications of error as such, but has a paragraph entitled "Issues Presented for Review."

Three of these issues go to the question of assistance of counsel at the "accusatory" step of the proceeding under the Fourteenth Amendment to the United States Constitution.

The remaining issue goes to the right of appellant to stand silent and remain mute under the protection of the Fifth Amendment. Cursory examination of the record discloses that appellant took the Fifth Amendment and was neither forced nor compelled to testify. This contention is devoid of merit.

Appellant's brief cites four United States Supreme Court decisions not one of which is applicable here. See In re Petition of Jones, 148 Mont. 10, 416 P.2d 540. The general rule is that a coerced confession may not be introduced in evidence against a defendant. If there was a confession obtained from this appellant, not only was it never used, but additionally it was not even produced as there was no trial.

However, it is appellant's contention that since his own counsel knew of the statement he had made to an assistant county attorney, that somehow this influenced his own counsel and that this, in some manner unknown to us, contributed to the incompetent advice of his own counsel. We simply say that there is no merit to this contention.

We note in Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770, "The standard of inexcusable default set down in Fay v. Noia adequately protects the legitimate state interest in orderly criminal procedure, *for it does not sanction needles piecemeal presentation of constitutional claims in the form of deliberate by-passing of state procedures.*" (Emphasis added.)

By entering his plea of "guilty" appellant admitted that the murder charge was well pleaded and in so doing

waives all other defenses other than that the information charges no offense. This question was carefully tested by the "alleged incompetent counsel," Messrs. Cyr and Mullany. Appellant likewise waived the right to trial and the incidents thereto.

In Petition of Koski, 143 Mont. 472, 392 P.2d 77, we find a particularly appropriate Opinion conforming in many respects to the instant case. There it is stated: "In his petition, Koski states that he entered a plea of guilty to murder in the second degree and was sentenced to a term of 30 years on October 29, 1954. He was represented by counsel, in fact by a long experienced attorney who has for many years specialized in criminal defenses. Koski say he 'copped' a plea because he was threatened by the county attorney and sheriff's deputies with a first degree murder charge, carrying a penalty of death or life imprisonment, also, that he was promised a lighter sentence. It should be noted here that he did receive a lighter sentence because a charge of murder in the second degree can result in a sentence of life imprisonment.

"Petitioner further states that he was trying to kill a man who was coming at him with an axe when the decedent stepped into the line of his fire; that he then became scared and ran and he exchanged shots with another man until taken into custody by the sheriff. This, he asserts, constitutes self-defense. In the eyes of his most able and talented defense counsel it must have appeared different because upon his advice the plea of guilty to an offense less than first degree murder was entered. In the opinion of the judge who imposed the sentence there were no mitigating circumstances."

Reverting back to the alleged incompetency of counsel, in State v. Tooker, 147 Mont. 207, 410 P.2d 923, 927, the court said: "Concerning proposition two 'right to effective assistance of counsel' we would like again to comment, as we have before, on this constant charge made by convicted felons. This court, and we are sure the other appellate courts of this coun-

try, are in the same position, is constantly having to listen to this plea from convicted felons. So rare are the pleas valid that such cases are highlighted due to their rarity. The bar of this state, and Mr. Gillan in particular, are called upon to perform such defenses, often at a personal sacrifice and financial loss, and often receive abuse from an uninformed public. In doing so they contribute the highest of public service for which they should be honored rather than abused."

The various contentions raised have been examined and considered and we find them to be without merit.

The order of the district court denying all of the many writs of the appellant is affirmed in all particulars.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUS-TICES JOHN C. HARRISON, ADAIR and CASTLES concur.